UNITED STATES of America

v.

Frank DeMARCO, Jr., and Ralph G. Newman.

Crim. No. 75-123.

United States District Court, District of Columbia.

April 16, 1975.

Jay Horowitz, Atty., Watergate Sp. Prosecution Force, Washington, D. C., for United States.

Charles A. McNelis, Washington, D. C., for defendant DeMarco.

William E. McDaniels, Washington, D. C., for defendant Newman.

### MEMORANDUM

GASCH, District Judge.

This matter came on for consideration on defendants' motion to transfer this cause to the district of defendants' residence, namely, in the case of Mr. De-Marco, Los Angeles (Central District of California), and Chicago, in the case of Mr. Newman (Northern District of Illinois).

Both defendants rely upon 18 U.S.C. § 3237(b), which reads as follows:

(b) Notwithstanding subsection (a), where an offense is described in section 7203 of the Internal Revenue Code of 1954, or where an offense involves use of the mails and is an offense described in section 7201 or 7206(1), (2), or (5) of such Code (whether or not the offense is also described in another provision of law), and prosecution is begun in a judicial district other than the judicial district in which the defendant resides, he may upon motion filed in the district in which the prosecution is begun, elect to be tried in the district in which he was residing at the time the alleged offense was committed: *Provided,* That the motion is filed within twenty days after arraignment of the defendant upon indictment or information.

Eligibility for transfer thus depends on *four* conditions: (1) It must appear that the offense involves use of the mails; (2) and is an offense described in § 7201 or § 7206(1), (2), or (5) of the Internal Revenue Code of 1954 (Title 26, United States Code); (3) that prosecution was commenced in a district other than the district of defendant's residence; and (4) that the transfer motion was filed within twenty days after arraignment. As to conditions (3) and (4) there is no issue.

In an 18-page four-count indictment filed in this district by the Special Prosecutor of the Watergate Special Prosecution Force on the 19th of February, 1975, these defendants are charged with assisting former President Nixon and Mrs. Nixon in the preparation of certain false and fraudulent income tax returns, in that certain deductions claimed were based upon deductions allowable prior but not subsequent to July 26, 1969, and in an effort to claim such deductions, the date of the charitable contribution by Mr. Nixon of his papers was claimed to have been prior to that date. Mr. DeMarco was alleged to have been Mr. Nixon's tax attorney and Mr. Newman is alleged to have appraised the pre-Presidential papers which were the subject of the contribution.

Focusing, as we must, on Section 3237 of Title 18, it appears, insofar as Mr. Newman is concerned, that the offense described in Count One of the indictment involves use of the mails as follows. Overt acts 6 and 7 pertaining to Mr. Newman alleged

6. On or about April 6, 1970, RALPH G. NEWMAN had a telephone conversation with Mary Walton Livingston, who was then at the National Archives Building in the District of Columbia, in which RALPH

G. NEWMAN stated that his March 27, 1970, letter to her would be the only deed of gift reflecting Richard M. Nixon's alleged 1969 gift of pre-Presidential papers which GSA would receive.

7. On or about April 6, 1970, RALPH G. NEWMAN caused an affidavit to be mailed to FRANK DE-MARCO, JR. in which RALPH G. NEWMAN stated he had examined the pre-Presidential papers, described as "The Papers of Richard M. Nixon, Part II," from April 6 to April 8, 1969.

Other overt acts, in the conspiracy count, 3, 8, 12, 14 and 23 refer to the use of the mails.

The charging paragraph, numbered 12 of Count One of the indictment, alleges that Mr. Newman, Mr. DeMarco and another "did combine, conspire, confederate, and agree together and with each other to defraud the United States and an agency thereof by impairing, impeding, defeating, and obstructing the proper and lawful governmental functions and rights of the IRS to ascertain, compute, levy, assess, and collect Federal income taxes due and owing from Richard M. and Patricia R. Nixon."

The next charging paragraph, numbered 13, alleges in substance that the conspirators would cause to be made and transmitted false and fraudulent verbal and written statements and documents to IRS for the purpose of representing that prior to July 26, 1969, the effective date of legislation which reduced and restricted charitable tax deductions, that the gift of Mr. Nixon had occurred prior to the effective date of the act, whereas the gift occurred subsequent to the effective date of the act.

■ Paragraph 14, in substance, charges the conspirators with aiding, assisting, and counselling in matters arising under the Internal Revenue laws and advising in the preparation of documents, affidavits and returns which were fraudulent and false as to material matters. As the government concedes, this language charges a violation of 26 U.S.C. § 7206(2).

Thus it is plain that the thrust of the conspiracy count of the indictment is that these defendants are charged with aiding, assisting and counselling in the making of false and fraudulent income tax returns which had the effect of defrauding the United States of income taxes owed by Mr. and Mrs. Nixon.

■■ Mr. Newman is charged with predating the appraisal and it would appear that the acts charged in the indictment fall under the enumerated Sections 7201 [1] or 7206(2) [2] of Title 26, United States Code, or both sections. Since Mr. Newman, a resident of Chicago, Illinois, has, through counsel, moved for transfer to his home district within the time prescribed by law, it appears that he is entitled to such transfer. As previously pointed out, one of the requirements of eligibility for transfer under Section 3237(b) is use of the mails. The government argues for a restricted interpretation of the phrase: "where the of-

[1]. "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

[2]. "Any person who—
(2) Aid or assistance.—Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document; or
          *          *          *          *          *
shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution."

fense involves use of the mails." The government's contention is that this phrase means the mailing by the taxpayer of his return to IRS. The cases do not support such an interpretation. Section 7201 of Title 26, United States Code, refers to "any person" who willfully attempts in any manner to evade or defeat any tax imposed by this section. "Any" means all persons, not just the taxpayer whose returns are in issue.[3] Likewise, the second enumerated section, 7206, refers to "any person" and subsection (2) specifically includes those who willfully aid or assist.

It is noted that Count Two charges Mr. Newman with the substantive violation of Section 7206(2) in that he "did aid and assist in the preparation and presentation of a document which was fraudulent and false as to a material matter, to wit, the aforesaid affidavit . . . ." In overt acts 7, 8, 9, and 10 of Count One, the government alleges the mailing of this affidavit as well as its attachment to the Nixon 1969 tax return and the presentation to IRS.

Cases cited by counsel support his contention that under the circumstances alleged in this indictment, Mr. Newman is entitled to a transfer. United States v. Rosenberg, 226 F.Supp. 199 (S.D.Fla. 1964), like the instant case, included a count charging conspiracy under 18 U.S.C. § 371. The government argued there, as it argues here, that transfer to the district of Rosenberg's residence was not within the contemplation of Section 3237(b) for the reason that 18 U.S.C. § 371 (conspiracy) is not one of the enumerated offenses under the transfer section, 3237(b). In *Rosenberg*, as in the instant case, the substantive count did charge a violation of one of the enumerated sections, namely, Section 7201 of Title 26. The *Rosenberg* Court, at page 201, concluded:

This Court concludes that said section 3237(b) gives each defendant the right to require the transfer of the conspiracy count, along with the substantive counts, to the judicial district of his residence. This result will make it possible for each defendant to be tried in a single prosecution in the judicial district where he resides. It will prevent dual or triple prosecutions at different times and places. Such a result appears to fulfill, rather than frustrate, the purpose of Congress. Moreover, such a result accords with reason, and facilitates the administration of justice.

In United States v. Kimble, 186 F. Supp. 616 (S.D.N.Y.1960), the indictment was in two counts, each charging a violation of Internal Revenue laws, but neither count specified one of the enumerated sections of the Internal Revenue Code. On the motion to transfer under the provisions of Section 3237(b) of Title 18, Judge McGohey of the Southern District of New York ruled, at page 618, that defendant was entitled to a transfer:

Accordingly, the first test of availability must be, and I hold it is, the *nature and effect* of the acts alleged. If these would support a charge under one of the specified provisions of the Internal Revenue Code, it is immaterial that the charge is laid under another applicable provision of law. (Emphasis supplied.)

In United States v. Dalitz, 248 F. Supp. 238 (S.D.Cal., C.D.1965), as in the instant case, defendant was charged under the conspiracy statute, 18 U.S.C. § 371. This was a one-count indictment in which this was the only charge, but as the Court pointed out, the real offense

---

3. United States v. Johnson, 319 U.S. 503, 514, 518, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943) as to the complicity of aiders and abettors and the treatment of them as principals. Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418 (1943), breadth of the phrase "in any manner."

concerns a violation of Section 7201 of the Internal Revenue Code, one of the enumerated sections set forth in 3237(b) of Title 18. In granting defendant's motion to transfer to the district of his residence, the Court noted at page 241:

> Since the real offense concerns a violation of Section 7201, the application of 18 U.S.C. § 3237(b) would appear appropriate to allow defendant Dalitz to undergo trial in Nevada, the state of his residence. The Indictment under the conspiracy section should not circumvent the intent of Congress in the circumstances.

The government relies on the *Wortman* case, 26 F.R.D. 183 (E.D.Ill.1960), which involved a conspiracy count under 18 U.S.C. § 371 and several substantive counts brought under enumerated sections. The substantive counts were ordered transferred to the district of the defendant's residence; however, the Court refused to transfer the conspiracy count, thus necessitating separate trials. The doctrine of the *Wortman* case was rejected in the *Rosenberg* case, *supra*. *See also* United States v. Dalitz, *supra*.

The most recent case brought to the attention of the Court is United States of America v. Rocco Youse, 387 F.Supp. 131 (E.D.Wis.1975) (Judge John W. Reynolds). Considering evidence *aliunde* the indictment and following the decisions in *Dalitz, supra,* and *Kimble, supra,* with respect to use of the mails, the District Court granted the motion to transfer to the district of defendant's residence. Another matter discussed in *Youse* which merits consideration is the rejection by Judge Reynolds of the government argument that Section 3237(b) is available only if it pertained to using the mails to transmit one's income tax return to the collector. The Court said, at pages 134–135:

> Apparently the Government contends that a § 3237(b) transfer is available only if defendant used the mails in filing the returns in question. Nothing in the language of the statute, its legislative history, or in subsequent cases arising under the statute indicates that Congress intended the phrase "use of the mails" to apply only to the mailing of the returns for filing. Section 3237(b) requires only that the defendant use the mails to commit the acts proscribed by the statute alleged to have been violated in the indictment.

To the extent that the *Wortman* case is contra to the result reached, the Court declines to follow it.

The government places extensive reliance in a 30-page transcript of a hearing on this provision presented by Congressman Preston of Georgia, the proponent of the bill now codified at Section 3237(b) of Title 18. The Court has no problem with the lack of ambiguity in Section 3237(b). In that connection the Court is constrained to recall the quip of Justice Frankfurter in Greenwood v. United States, 350 U.S. 366, at 374, 76 S.Ct. 410, 415, 100 L.Ed. 412.[4] However, because of the earnestness with which government counsel insisted upon consideration of the legislative history, the Court has carefully read this transcript on which the government relies. While it is true that Congressman Preston seemed concerned primarily with the tax problems of some of his Savannah constituents who mailed their income tax returns from their homes in Savannah and who, when indicted, would under then existing law be tried in the home district of the collector, namely, Atlanta, the section, however, is not limited to the illustrations given by Mr. Preston. It is considerably broader in its scope than the specific cases to which Mr. Preston referred.

Our Court of Appeals in March v. United States, 506 F.2d 1306, recently stated the controlling rule with refer-

4. "But this is a case for applying the canon of construction of the wag who said, when the legislative history is doubtful, go to the statute."

ence to the proper utilization of legislative history.

It is well settled that "[w]here the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion."

To be sure, as the Government argues, this "plain meaning rule" does not "preclude consideration of persuasive evidence if it exists." The Supreme Court has warned that

words are inexact tools at best and for that reason there is wisely no rule of law forbidding resort to explanatory legislative history no matter how "clear the words may appear on 'superficial examination.' "

In our opinion, this admonition merely underscores the importance of construing this statute, if possible, to give effect to the congressional purpose.

506 F.2d at 1313–1314 (footnotes omitted).

The legislative history makes it clear that Congress intended to follow the Sixth Amendment to the Constitution and afford the accused "a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." It is clear that Mr. Preston was concerned with the expense to which an accused might be subject in defending the case and bringing character witnesses to a district other than his home district for the purpose of trial. At page 7 of the transcript of the Hearing on the proposed legislation which is now codified at Section 3237(b) filed by the government, which constitutes a part of the legislative history on which the government relies, Mr. Preston said:

All too often citizens of my district, as well as all others, have been indicted by a Federal court sitting at the residence of the Collector, instead of in the judicial district of the taxpayer. This results in the taxpayer being carried oftentimes into another state where he is tried before a jury of total strangers who know nothing of his general reputation and character. We, as lawyers, know that the best asset a defendant can carry into court when he is on trial is a good reputation and character. When the defendant is carried beyond his own judicial district for trial, he must pay the expenses of his witnesses, as well as counsel, throughout a lengthy trial. This imposes a great financial burden on the defendant which he is many times not able to bear.

Count Two of the indictment charges Mr. Newman with violating Section 7206(2) of Title 26, in that the government contends that his appraisal and examination of the pre-Presidential papers occurred after July 26, 1969, and not before, as his affidavit states. Count One of the indictment, the conspiracy count, previously discussed, charges that Mr. Newman mailed this false affidavit to the defendant DeMarco in Los Angeles.

From the indictment itself, as well as the plain language of Section 3237 of Title 18, it appears that Mr. Newman is entitled to be tried in the district of his residence, namely, the Northern District of Illinois.

■■■ Mr. DeMarco has also moved for transfer to the district of his residence, the Central District of California. He, likewise, relies upon the plain meaning of Section 3237(b) of Title 18. The indictment, in overt act 23 of Count One, conspiracy, charges him with causing a memorandum to be mailed to the Joint Committee in which he stated that on April 21, 1969, Edward L. Morgan had signed a deed purporting to relate to the 1969 gift of papers by Richard M. Nixon. While it is clear that much of the conduct described in the indictment is alleged to have occurred in this district, the indictment does specify in overt act 8 that defendant DeMarco did

**618**

cause the Newman affidavit, described in overt act 7, which had been mailed to DeMarco, to be affixed to the 1969 Nixon tax return.

The first count, which involves both Mr. DeMarco and Mr. Newman, and another, is a conspiracy count. Under the rules of conspiracy, once conspiracy is proved, the acts of each conspirator is attributable to the other. Therefore, any mailings attributable to other conspirators become the responsibility of the particular conspirator whose case the jury is considering. This may be considered by the Court in evaluating whether Section 3237(b) provides Mr. DeMarco with an appropriate basis for his motion. Mailings are either mentioned specifically or involved in overt acts numbered 3, 6, 7, 8, 9, 12, 14 and 23. Count Three charges Mr. DeMarco with making a false official statement in connection with the preparation of the Nixon tax returns in that it did represent that the charitable gift of Mr. Nixon was made in 1969 whereas it was made subsequent thereto and under conditions considerably more stringent which would have allowed a materially smaller tax deduction. Count Four involves the alleged actions by Mr. DeMarco calculated to influence, obstruct and impede and endeavor to influence, obstruct, and impede the investigation by the Joint Committee on Internal Revenue Taxation of the Congress of the United States. Count One clearly involves matters within the purview of Section 3237(b). Count Three involves matters within the purview of Section 3237(b) but Count Four does not. Since Mr. DeMarco has timely moved for a transfer of all counts to his home district, it seems to the Court that such action would be more clearly consonant with the interests of justice than to sever Count Four for trial in this district and transfer the other two counts for trial in Los Angeles. Accordingly, the three counts, One, Three, and Four involving Mr. DeMarco will be transferred to the Central District of California and Counts One and Two, involving Mr. Newman, will be transferred to the Northern District of Illinois.

So ordered.