UNITED STATES of America,
Petitioner,

v.

UNITED STATES DISTRICT COURT FOR the SOUTHERN DISTRICT OF CALIFORNIA, Respondent,

Fred R. Solomon, Jr.; George G. Nicoladze; Jean D. Littlefield; Harold B. De Julio; and William H. Henneberg, Jr., Real Parties in Interest.

No. 82–7492.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 4, 1982.

Decided Oct. 13, 1982.

Opinion Filed Nov. 15, 1982.

Eugene G. Iredale, Ramond J. Coughlan, Asst. U.S. Atty., San Diego, Cal., Roger S. Ruffin, Ruffin & Rotwein, San Francisco, Cal., for petitioner.

Howard B. Frank, Frank & Milchen, San Diego, Cal., Harold L. Perry, Oakland, Cal., Nathan Cohn, San Francisco, Cal., for respondent.

Before GOODWIN, ANDERSON and BOOCHEVER, Circuit Judges.

PER CURIAM.

The government petitions for a writ of mandamus, seeking to overturn a district court order transferring certain counts of a tax evasion indictment to the district where some of the defendants reside. The wording of 18 U.S.C. § 3237(b) compels us to deny the petition.

In May 1982, the government filed an 89-count indictment in the Southern District of California (San Diego), charging five defendants with a conspiracy to defraud the United States. In addition, the indictment raised numerous substantive tax evasion counts against the defendants individually. The indictment described a continuing program of tax evasion devised by the defendants, organized and operated from San Diego.[1]

---

1. The scheme allegedly involved assignment of    grossly inflated cost bases in various patents,

Virtually all the alleged activity connected with the scheme took place in or around San Diego. Tax returns of the defendants and the other individuals investing in the "tax shelters" established by the defendants were mailed to the Internal Revenue Service (IRS) Center in Fresno, which is in the Eastern District of California. Two of the defendants, Nicoladze and De Julio, resided in the San Francisco Bay Area, in the Northern District of California.

These two defendants filed a timely motion under 18 U.S.C. § 3237(b) to transfer venue as to them to the Northern District of California because of their residence therein. After extensive briefing and argument, the district court granted the change of venue as to the substantive counts against them, while retaining the conspiracy count in San Diego. The government then conditionally stipulated to the transfer of additional counts against two other defendants to the Northern District. The charges against the remaining defendant, a resident of San Diego, and conspiracy charges against another were kept in the Southern District.

Faced with the prospect of conducting two potentially lengthy trials instead of one, the government then petitioned this Court for a writ of mandamus to review the order granting the transfer as to Nicoladze and De Julio.

Our disposition turns on the interpretation of 18 U.S.C. § 3237(b) (1976), which provides in pertinent part:

Notwithstanding subsection (a), ... where an offense involves use of the mails and is an offense described in section 7201 or 7206(1), (2), or (5) of ... [the Internal Revenue] Code ... and prosecution is begun in a judicial district other than the district in which the defendant resides, he may upon motion filed in the district in which the prosecution is begun,

elect to be tried in the district in which he was residing at the time the alleged offense was committed ....

The principal inquiry concerns the meaning of the phrase "involves use of the mails". It is undisputed that all the various tax returns encompassed by the indictment in this case were mailed to the IRS Center in Fresno. The defendants argued that this fact was literally sufficient to bring the case within § 3237(b). The government, however, urges a much more restrictive reading of the phrase.

The government contends that the phrase should be confined to situations where the prosecution relies upon the fact of mailing to lay venue in a particular district. In support of its theory, the government invites us to examine the legislative history of the statute, and in particular certain remarks made by Congressman Preston of Georgia, the sponsor of the bill that ultimately became § 3237(b).[2]

Under prior law, where tax evasion events took place in one district ("District A"), and the tax returns were mailed to an IRS office in another district ("District B"), the government had the option of bringing the prosecution in either District A or B. Congressman Preston introduced H.R. 8252, 85th Cong., 2d Sess. (1958) to prevent government abuse of such situations, where the prosecution was brought in a district far from the taxpayer's home simply because of the location of the IRS office. Hearings on H.R. 8252 Before Subcommittee No. 4 of the House Committee on the Judiciary, 85th Cong., 2d Sess. 7, 10–12 (April 25, 1958) (unpublished).

The original motivation behind 18 U.S.C. § 3237(b) seems clear enough. However, Congress may not have considered, in drafting the statute, the situation where the alleged tax evasion took place in District A, the tax returns were mailed to the IRS

generating huge depreciation deductions for various individuals investing in partnerships owning the patent rights. The indictment also alleged fraudulent back-dating of purchase agreements to avoid the effect of the Tax Reform Act of 1976.

2. The historical references are thoroughly explored in both the majority and minority opinions in *In re United States (Clemente)*, 608 F.2d 76 (2d Cir.1979), *cert. denied*, 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980).

office in District B, but some of the defendants happen to reside in District C. If the government attempted to bring the prosecution in District B, based on a mailing to the IRS office located there, § 3237(b) would apply, as Congress intended. In this case, however, venue was laid in District A, the location of the alleged criminal activity.

The government relies heavily on the majority opinion in *In re United States (Clemente)*, 608 F.2d 76 (2d Cir.1979), *cert. denied*, 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980), to support its narrow reading of § 3237(b). There the court, finding a legislative intent only to prevent a limited type of abuse, held that the "home venue option" was not available where no such abuse was present. Thus, where the government relied on independent facts of tax evasion to lay venue in one district, the Second Circuit held that the prosecution did not "involve use of the mails". *Id.* at 80. Accordingly, the transfer option was not allowed.

There is much to be said for the government's position. It does not appear that the sponsors of H.R. 8252 actually considered the type of situation presented in this case when the statute was drafted. Indeed, the Senate Report stated that any additional costs of prosecution to the government under this new law would be "inconsequential." S.Rep. No. 1952, 85th Cong., 2d Sess. 1, *reprinted in* 1958 U.S.Code Cong. & Ad. News 3261, 3262. Application of the law to this case, however, would require the government to conduct two lengthy and similar trials at considerable expense and inconvenience. One of these trials would be in a remote district with no connection with the crime except for the fortuity of the defendants' residence there. On the other hand, there are balancing considerations of the expense and inconvenience of defendants, who are presumed to be innocent.

Despite the practical advantages in avoiding duplicate effort, we find ourselves compelled by the plain language of the statute to reject the positions taken by the government and the Second Circuit. Whatever may have been the original intent of the bill's sponsors, the language adopted to accomplish those goals is much broader than that which would have covered the situations actually considered by Congress. We are drawn to this conclusion for the reasons outlined in the dissenting opinion by Judge Kearse in *Clemente*, 608 F.2d at 81–86.

As noted by Judge Kearse, the legislative history can be read to support the view that Congress intended *all* tax evasion defendants to have the "home venue option" where returns were mailed to the IRS. *See* H.R.Rep. No. 1890, 85th Cong., 2d Sess. 2; S.Rep. No. 1952, 85th Cong., 2d Sess. 1–2, *reprinted in* 1958 U.S.Code Cong. & Ad. News 3261, 3262. Further, the plain language of the statute does apply to the facts of this case because the defendants did use the mails to send in the tax returns at issue. Finally, the overwhelming weight of judicial authority prior to *Clemente* held that the option was available to defendants whether or not the government relied upon mailing to establish venue. *See United States v. DeMarco*, 394 F.Supp. 611 (D.D.C. 1975); *United States v. Youse*, 387 F.Supp. 132 (E.D.Wis.1975); *United States v. Dalitz*, 248 F.Supp. 238 (S.D.Cal.1965); *United States v. Rosenberg*, 226 F.Supp. 199 (S.D. Fla.1964); *United States v. Wortman*, 26 F.R.D. 183 (E.D.Ill.1960), *rev'd on other grounds*, 326 F.2d 717 (7th Cir.1964); *United States v. Kimble*, 186 F.Supp. 616 (S.D. N.Y.1960).

We also note that Congress amended § 3237(b) in 1966, to add willful failure to file tax returns as a crime for which the transfer option would be available. At that time, several courts had reached the conclusion that transfer would be allowed whether or not the government relied upon mailing to lay venue. Not only did Congress fail to address this problem, but the Senate Report stated broadly, "to be sure that the taxpayer has the right to be tried in the district in which he resides, the bill amends present law to provide that he may elect to remove his trial to the judicial district of his residence." S.Rep. No. 1625, 89th Cong., 2d Sess. 3, *reprinted in* 1966 U.S.Code Cong. & Ad.News 3676, 3681.

We find ourselves obliged to accord to § 3237(b) the plain meaning of its rather

broad language. If the result in this case is disturbing on the grounds of judicial efficiency, application for the amendment of the statute must be made to Congress, not to this Court. Accordingly, the government's petition for a writ of mandamus is

DENIED.