**UNITED STATES of America, Plaintiff,**

v.

**John M. MELVAN, Defendant.**

**No. CR 87–796(A)–ER.**

United States District Court, C.D. California.

Dec. 31, 1987.

**998**

Laurie Levenson, U.S. Atty., Los Angeles, Cal., for plaintiff.

Eugene Iredale, San Diego, Cal., for defendant.

## MEMORANDUM OPINION

RAFEEDIE, District Judge.

Defendant John Melvan, one of 11 alleged co-conspirators charged in this case, moves for a change of venue as a matter of right. Melvan is accused of defrauding a federally insured financial institution along with other co-conspirators, and of personal income tax evasion. He moves for a change of venue to the district of his residence, the Southern District of California pursuant to 18 U.S.C. § 3237(b), which provides for change of venue as a matter of right in some circumstances to the home district of a defendant charged with tax evasion. Section 3237(b) was amended in 1984, and the application of the new language presents a case of first impression. While it appears the motion for change of venue would be well taken under the old statute and the case law interpreting it, the new language and legislative history of the amendment require denying Melvan's motion for change of venue.

## FACTUAL BACKGROUND

John Melvan is charged, along with 10 other alleged co-conspirators, in a 40 count indictment. The charges include defrauding federally insured financial institutions by obtaining loans on various pieces of property which had been fraudulently inflated in value by the use of multiple escrows and straw buyers. Melvan is accused of acting as a straw buyer for a piece of property in Bel Air, California, a wealthy suburb of Los Angeles. Melvan allegedly allowed his name and background to be used through a double escrow to falsely inflate the value of the property. A loan was then allegedly obtained by other co-conspirators at the inflated value from Progressive Savings and Loan in Alhambra, California.

Melvan is also charged with personal income tax evasion. He allegedly received a payment for allowing the use of his name in the double escrow from the other co-conspirators. According to the indictment, however, he failed to report the payment as income on his 1982 federal income tax return.

Melvan is a resident of Vista, California, in the Southern District of California. The property allegedly used in the fraud is located in the Central District, as is the Savings and Loan which was the alleged victim. Other property allegedly used by others in the conspiracy is also located in the Central District, as are other financial institutions that were allegedly victimized by the scheme. Most of the other defendants in the indictment reside in the Central District. Most of the evidence and witnesses also are here in the Central District. The Internal Revenue Service Processing Center which received Melvan's 1982 tax return for processing is located in the Eastern District of California.

## LEGAL DISCUSSION

The United States Constitution provides that venue for a criminal trial shall be in the state and district where the offense was committed. U.S. Const.Amend. VI. The venue statute and the Federal Rules of Criminal Procedure likewise guarantee that the prosecution of a crime will take place within the state and district which was also the location of the charged crimes. 18 U.S.C. § 3232; Fed.R.Crim.Proc. Rule 18.

When an offense occurs in more than one district, or is completed in a district other than the district in which the crime began, the Government has the option of prosecuting the offense in any district in which criminal activity took place. 18 U.S.C. § 3237. That statute provides that any offense which was begun in one district

and completed in another may be "prosecuted in any district in which such offense was begun, continued or completed." 18 U.S.C. § 3237(a). In addition, any offense which "involves the use of the mails or interstate transportation" may be prosecuted "in any district from, through, or into which such commerce, mail matter, or imported object moves." *Id.*

Some tax offenses are exempted from this broad discretion concerning choice of venue for an offense involving the use of the mails. Charges of tax evasion, willful failure to file a return and falsifying documents associated with a tax return must be prosecuted in the district of residence of the defendant when venue outside that district is chosen "based solely on a mailing to the Internal Revenue Service...." 18 U.S. C. § 3237(b).

The language of § 3237(b) is the result of attempts by Congress to prevent the IRS from requiring a taxpayer to travel a great distance to the district of the IRS collection office which receives his tax return for processing when the taxpayer is charged with an enumerated tax offense. Without the limitations imposed by § 3237(b), § 3237(a) would allow the IRS to compel a taxpayer charged with tax evasion to face the charges hundreds of miles from his home, far from the evidence and witnesses necessary to the case.

The attempt to limit the venue choices of the IRS in these tax cases led to the original language of § 3237(b). That text, written in 1958, mirrored the language of § 3237(a): "[W]here an offense involves the use of the mails and is an offense [of tax evasion or falsifying tax-related documents, a defendant may] elect to be tried in the district in which he was residing at the time the alleged offense was committed...."

The legislative history of this 1958 amendment indicated that the authors intended to address the problem of a taxpayer forced to defend a tax evasion charge far from home merely because the IRS had received his tax return at a location a great distance from the taxpayer. The legislative history is described in detail in *In re United States (Clemente)*, 608 F.2d 76 (2nd Cir.1979), *cert. den.*, 446 U.S. 908, 100 S.Ct. 1834, 64 L.Ed.2d 260 (1980). Congressman Prince H. Preston, the principal author of the bill, stated in legislative hearings that he felt it was unfair to force a resident of, for example, Savannah, Georgia to travel to Atlanta to defend against a tax evasion charge merely because the IRS collection office was in Atlanta. *Id.* at 79. The statute was aimed at preventing the imposition of the burden of traveling a great distance to defend against a criminal charge, on the notion that the mere receipt by the IRS of an allegedly false tax return should not be sufficient to establish venue for a criminal prosecution far from the taxpayer's home.

The broad language of § 3237(b), "involves the use of the mails," presented problems in applying the law. Criminal prosecutions which included tax evasion charges were split up by courts, moving the tax evasion charges to the home district of a defendant, while maintaining other charges in the district in which the prosecution was originally brought. In addition, a split developed between the circuits over whether the mailing referred to by the statute must be a mailing to the IRS.

In *United States v. Wortman*, 26 F.R.D. 183 (E.D.Ill.1960), *rev'd on other grounds*, 326 F.2d 717 (7th Cir.1964), six defendants were charged with conspiracy and with tax evasion. *Id.* at 189. Two of the defendants moved to transfer venue of the tax evasion charges to their home districts, one to the Eastern District of Missouri, and one to the Southern District of Illinois. *Id.* at 193. Their motions were granted for the tax evasion charges, but the conspiracy charge was retained in the Eastern District of Illinois, as were the charges against the other four defendants. *Id.* The Government wound up pursuing the prosecution of a single conspiracy in three different districts as a result of this ruling. One can well imagine the costly duplication of effort necessary to perform such a feat, where the same evidence of a single conspiracy would be presented to three different juries at three different times and in three different places.

In *United States v. Dalitz*, 248 F.Supp. 238 (S.D.Cal. 1965), the court was faced

with a similar tax evasion and conspiracy indictment. The court ruled that one defendant, a resident of Las Vegas, was entitled to have venue transferred to his home district of Nevada. *Id.* at 239. This was necessary even though the indictment did not allege the mailing as part of the conspiracy. *Id.* A transfer was required because the defendant had mailed his tax return to the IRS. *Id.* Moreover, the court also transferred the conspiracy count to Las Vegas, despite the fact that the other co-defendant was a resident of Los Angeles. *Id.* at 241–42.

Transfer of venue under § 3237(b) has been ordered regardless of the distance to the home district of the defendant. In *Wortman, supra,* the courthouses in the home districts of the defendants were farther away from their homes than the courthouse where the action was originally brought. *Id.* at 192–93. In *United States v. DeMarco,* 394 F.Supp. 611 (D.D.C.1975), *petition for mandamus den. without opinion* (D.C.Cir.1975), an indictment for conspiracy and tax evasion was brought by the Watergate Special Prosecutor against two men involved in appraising the papers of then-President Richard Nixon for the purposes of a tax deduction. *Id.* at 613. One of the defendants was a resident of Los Angeles, and the other lived in Chicago. *Id.* Each defendant's motion for a transfer of venue to his home district was granted, despite the recognition by the court that this meant sending part of the case from the District of Columbia to the Central District of California and part to the Northern District of Illinois. *Id.* at 618. The conspiracy count against one defendant was also moved to California. *Id.* This case, the simplest of conspiracy prosecutions, involving only two conspirators, was split up and moved to two different locations, one over 1,000 miles away, and one over 3,000 miles away. Again, there was a substantial duplication of effort in presenting the evidence of one conspiracy to two different juries in two different locations.

A complicated splitting of a large tax fraud prosecution was upheld in *United States v. United States District Court,* 693 F.2d 68 (9th Cir.1982). A large tax fraud scheme, organized and run from San Diego, resulted in an 89–count indictment against five defendants in the Southern District of California. *Id.* at 68. Two defendants, charged with tax evasion, were residents of the Northern District of California, and had mailed their tax returns to the IRS in the Eastern District of California. *Id.* at 69. The district court ruled that since the tax returns had been mailed, the tax evasion charges must be moved to the Northern District. *Id.* The court retained the conspiracy charges in the Southern District, along with the other charges against other defendants. *Id.* The Court of Appeals agreed that the statute required the transfer, despite the costly result of two lengthy trials in two separate locations. *Id.* at 70–71. The court noted, however, that this result did not seem to be intended by Congress. *Id.* at 69–70. The court felt constrained to read the statute as written, however, and transfer the case, stating that Congress had the power to change the statute, but the Court did not. *Id.* Again, a complex and lengthy trial involving several defendants was split up by the old language of § 3237(b), requiring enormous duplication of effort and cost.

This Ninth Circuit decision conflicted with rulings from the Second Circuit and the Fourth Circuit. *In re United States (Clemente), supra,* held that a defendant charged with racketeering and tax evasion was not entitled to a change of venue under § 3237(b). *Id.* at 81. The Appeals Court read the statute narrowly, and relied on the legislative history to prevent the change. *Id.* A strong dissent argued that the transfer was required by the language of the statute, regardless of any narrow intent discovered from the legislative history. *Id.* at 81–87 (Kearse, J., dissenting). This decision stood alone amongst the case authority against transferring venue. *See, United States v. United States District Court, supra,* at 70 (discussion of prior cases interpreting § 3237(b)).

The reasoning of the Second Circuit was later adopted by the Fourth Circuit in *In re United States (Nardone),* 706 F.2d 494 (4th Cir.1983), *cert. den.,* 464 U.S. 997, 104 S.Ct. 496, 78 L.Ed.2d 689 (1983). In this case, a

defendant was charged, not with evading personal income taxes himself, but with selling fraudulent tax shelters which enabled others to evade taxes. *Id.* at 496. The request to transfer venue was denied, in part because the transfer would have taken the case to the Southern District of New York, where *Clemente* controlled, and the district court there had refused to docket the case. *Id.* at 495–96.

In 1984, Congress stepped into this confusion with an effort to narrow the statute to reflect its original intent of assisting a taxpayer who could be forced to travel a great distance simply because he lived a great distance from an IRS collection office. Using the vehicle of the Deficit Reduction Act of 1984, P.L. 98–369, 98 Stat. 697, Section 3237(b) was amended. The phrase "use of the mails" was eliminated, and the right to have venue of criminal charges in one's home district was limited to cases where the Government had chosen venue "based solely on a mailing to the Internal Revenue Service...." 98 Stat. 697.

In the accompanying House Conference Report, the authors of the amendment set forth their intention with regard to this amendment. H.R.Conf.Rep. No. 861, 98th Cong., 2d Sess. 757 (1984), U.S.Code Cong. & Admin.News 1984, pp. 697, 1445. The conflict between the circuits as to the application of the phrase "use of the mails" is noted, and the intended result of the amendment is described:

> Thus, defendants will not be able to force transfer of venue solely because the mails were used as part of the alleged offense. The conferees note that the Internal Revenue Service and the Department of Justice generally attempt to establish venue for a criminal tax prosecution in the judicial district of the taxpayer's residence or principal place of business, because prosecution in that judicial district usually has the most significant deterrent effect. The conferees do not intend a change in that general policy. The conferees also note, however, that the Service and the Department may have valid reasons for bringing a prosecution in another district. Examples of this are multiple defendant cases or cases where venue for non-tax charges is established in a district other than the place of residence or business. The conferees do not intend to restrict the Service and the Department in instances such as these.

*Id.* at 1002–03, U.S.Code Cong. & Admin. News 1984, pp. 1690, 1691. The phrase which had caused so much confusion, and led to anamolous and costly splitting of cases involving tax evasion was eliminated, while the effort to protect a taxpayer from prosecution at an unreasonable location was preserved. The transfer was still available to a taxpayer as a matter of right, when venue outside his home district was based "solely on a mailing to the Internal Revenue Service."

Only one reported case has considered the amended 18 U.S.C. § 3237(b). In *United States v. Benjamin*, 623 F.Supp. 1204 (D.D.C.1985), the district court considered a motion to transfer venue from the District of Columbia to California. The motion was made under both § 3237(b) and Fed.R. Crim.P. 21(b). *Id.* at 1206. The court ruled that the offenses with which the defendants were charged were not among the tax offenses to which § 3237(b) applied. *Id.* at 1211. The court nonetheless transferred the case under rule 21(b), for the convenience of the parties and witnesses. *Id.* at 1215–16.

Defendant Melvan's motion for change of venue thus presents a case of first impression as to application of the new language of 18 U.S.C. § 3237(b). Under the previous version of § 3237(b), this court would have been forced to transfer venue of the tax evasion charge against Melvan to the Southern District of California. The old statute granted Melvan the right to transfer the case, as he had used the mails to send his allegedly false tax return to the IRS in Fresno. This would have resulted in splitting up of a very large and complex criminal prosecution involving 11 co-defendants and 40 charges. Evidence and witnesses, located in the Central District, would have been forced into court on two occasions, the second time over 100 miles away. In addition, the single conspiracy case would have to be proven twice, as the tax evasion here arises from alleged unre-

ported income that was the fruit of the conspiracy. This court would also have had to choose between transferring the conspiracy count to the Southern District along with the tax evasion charge, as was done in *DeMarco, supra,* or keeping the conspiracy charge here, as was done in *Wortman, supra.*

The new language of § 3237(b) does not require so costly and complex a result. The new law does not grant the right to a change of venue for tax evasion to the defendant's home district unless venue outside the home district is "based solely on a mailing to the Internal Revenue Service." This is not the case here. Melvan mailed his tax return to the IRS office in Fresno, California, which is in the Eastern District of California. The Government does not rely on the receipt of the tax return in any fashion to establish venue here in the Central District. The new statute therefore does not apply to Melvan's situation, and no change of venue is required.

This result is also consistent with the expressed intent of Congress in a case such as Melvan's. The legislative history states that Congress intends to allow venue outside the home district of a defendant in "multiple defendant cases or cases where venue for non-tax charges is established in a district other than the place of residence." This case involves 11 defendants, charged with a total of 40 counts of violating federal law, including defrauding a federally insured financial institution and tax evasion. Venue for the non-tax charges is established in the Central District by the location of the property involved, and the location of the acts alleged in the indictment. The intent of Congress is clearly that venue for Melvan's single tax evasion charge should not be transferred.

## CONCLUSION

The old statute, 18 U.S.C. § 3237(b), and case law would have required the change of venue for the tax evasion charge against Melvan to the Southern District of California. The 1984 amendment, however, is aimed at preventing a change of venue in just such as case as this, where there are many defendants and non-tax charges are properly venued outside the defendant's home district. This is confirmed by both the language of the statute and the legislative history of the amendment.

The motion of defendant John Melvan to change venue of the tax evasion charge against him is therefore denied.