# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-2252

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Edgar Marion Box, | * | |
| | * | |
| Appellant. | * | |
| | * | |
| | * | |

_____

Submitted: September 16, 1999
Filed: October 20, 1999

_____

Before McMILLIAN and MURPHY, Circuit Judges, and TUNHEIM,[1] District
Judge.

_____

MURPHY, Circuit Judge.

After methamphetamine was found in two searches of his house and the district
court[2] denied his motion to suppress the evidence, Edgar Marion Box pled guilty to

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District
of Minnesota, sitting by designation.

[2]The Honorable Scott O. Wright, United States District Judge for the Western
District of Missouri.

possession of methamphetamine with intent to distribute and to possession of methamphetamine in violation of 21 U.S.C. §§ 841 and 844. In his plea agreement Box preserved his right to appeal the suppression issues, and he was sentenced to 46 months imprisonment. On appeal Box again argues that the search warrants were issued upon affidavits that contained false statements and omitted material facts. We affirm.

Two separate warrants were issued to search Box's house, the first on March 20, 1998, and the second on July 3, 1998. Both warrants were issued upon affidavits submitted by Deputy John Scott, an investigator in the Hickory County Sheriff's Office.

In the affidavit supporting the application for the March warrant, Deputy Scott swore to the following facts about Box's possible possession of stolen goods: that Scott had been told by a Michelle Maynard that her boyfriend, Jackie Morrison, had stolen a collection of salt and pepper shakers from his mother, Dorothy Morrison, and traded them to Box for drugs; that Dorothy Morrison had confirmed that Jackie Morrison had stolen the salt and pepper shakers; and that law enforcement officials had observed a large collection of salt and pepper shakers in Box's house. Scott also stated that Jackie Morrison had been convicted of burglary in 1990; that Jackie Morrison had admitted to use of methamphetamine; that Box had been charged with manufacturing methamphetamine; and that Michelle Maynard had told Scott that Box was manufacturing methamphetamine in the area. On the basis of Deputy Scott's affidavit, Hickory County Judge John Anderton issued the warrant. The warrant was executed the following day and methamphetamine and paraphernalia associated with the production of methamphetamine were found in Box's house.

After his indictment, Box moved to suppress the evidence seized under the March warrant and sought an evidentiary hearing. He alleged that in the affidavit supporting his application Deputy Scott had deliberately or recklessly made false

statements and omitted material information undermining the credibility of his sources of information in violation of <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978). United States Magistrate Judge William A. Knox granted Box an evidentiary hearing on November 13, 1998.

Box offered testimony at the hearing in support of his allegations. Dorothy Morrison testified that she had not told Deputy Scott that Jackie Morrison had stolen her salt and pepper collection but that Scott had reported to her that the collection was missing. Box also offered evidence showing that Michelle Maynard had received an order of protection against Jackie Morrison on the day before Scott filed his affidavit and had reported an assault by Morrison on the day the affidavit was filed. Deputy Scott testified at the hearing that the statements in the affidavit were true, that he omitted information concerning Maynard's domestic problems because he did not think that they were relevant to the issuance of the warrant, and that he had not known that Maynard had an order of protection at the time he swore out the affidavit.

The second warrant to search Box's house was issued on July 3, 1998. In the affidavit supporting his application for this warrant, Deputy Scott attested to the following facts: that clandestine methamphetamine labs had been seized from Box's residences in 1996 and 1998; that a confidential informant had recently seen methamphetamine and paraphernalia associated with the production of methamphetamine in Box's house; and that the informant had stated that he had intended to manufacture methamphetamine with Box at the latter's house. On the basis of this affidavit, Judge Anderton issued the search warrant which was executed the following day. Methamphetamine and paraphernalia associated with its production were also found in Box's house during this search.

Box again claimed that Scott had deliberately or recklessly made false statements and omitted material information in the affidavit supporting the July warrant and moved

to suppress the evidence and for a <u>Franks</u> hearing. Magistrate Judge Knox granted his motion for a hearing, and it was held on November 20, 1998.

Box's first witness at this hearing was Ronnie Stonebrook, the confidential informant who had provided Scott with much of the information in the affidavit supporting the application for the July warrant. Stonebrook's testimony largely corroborated the statements that Scott attributed to him in the affidavit, but he took exception to one statement. He testified that he had not told Scott that he had planned to manufacture methamphetamine with Box at his house, but that he had told Scott that he and Box had planned to manufacture methamphetamine at Stonebrook's house. Stonebrook also testified that he had been charged with driving under the influence and assaulting a law enforcement officer in May, 1998, and that these charges had been reduced or dismissed after Scott had spoken with the prosecuting attorney. Stonebrook further testified that he had received two hundred dollars in cash from Hickory County in March, 1998 in exchange for information in another investigation.

Magistrate Judge Knox addressed both of Box's motions in a single report and recommendation which recommended that the motions to suppress be denied. He found that even if the affidavits supporting the March and July warrants were constructively amended to include the information that Box claimed was omitted wrongfully and to exclude the statements that Box claimed were attributed falsely to Dorothy Morrison and Ronnie Stonebrook, both affidavits would have alleged sufficient facts to support findings of probable cause. In the alternative, Magistrate Judge Knox found that Scott did not deliberately falsify or omit information in either affidavit. The district court adopted the report and recommendation in its entirety and denied the suppression motions.

A search warrant may be invalid if the issuing magistrate's probable cause determination was based on an affidavit that contained false statements made knowingly and intentionally or with reckless disregard for the truth. <u>Franks v.</u>

Delaware, 438 U.S. 154, 171 (1978). In order to prevail on a Franks challenge a defendant must show: "1) that a false statement knowingly and intentionally, or with reckless disregard to the truth, was included in the affidavit, and 2) that the affidavit's remaining content is insufficient to provide probable cause." United States v. Humphreys, 982 F.2d 254, 259 n.2 (8th Cir. 1993). A similar analysis applies to omissions of fact where a defendant must show: "1) that facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading, and 2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." Id. (citations omitted).

Because both affidavits contained undisputed factual allegations sufficient to show probable cause, we affirm. In the unchallenged portion of the affidavit supporting the March warrant, Deputy Scott attested, among other things, that Box was being prosecuted for attempting to manufacture a controlled substance and that Michelle Maynard had informed law enforcement officials that Box currently was manufacturing drugs. This affidavit, modified to exclude Dorothy Morrison's statements and to include the information about the domestic difficulties of Maynard and Jackie Morrison, is sufficient to show probable cause. Similarly, the affidavit supporting the July warrant, if read to exclude those statements challenged by Box and to include information he alleges was wrongfully omitted, even more clearly provides sufficient facts to make out probable cause. In the unchallenged portion of the affidavit, Scott attested, among other things, that methamphetamine labs twice had been seized from Box and that Stonebrook had been inside Box's house in the previous week and had seen methamphetamine and paraphernalia used in the manufacture of methamphetamine. After examining the record, we conclude that the district court did not err in denying the motions to suppress.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.